**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**THOMAS A. KEARNEY,**

                  **Plaintiff,**

                  **v.**

**BRIAN KOZLOSKI et. al,**

                  **Defendants.**

**1:14-cv-1446
(GLS/DEP)**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Thomas A. Kearney | |
| Pro Se | |
| Sing Sing Correctional Facility | |
| 354 Hunter Street | |
| Ossining, NY 10562 | |
| | |
| **FOR THE DEFENDANTS:** | |
| *Brian Kozloski, David Darling, and* | |
| *Village of Catskill* | |
| Shantz, Belkin Law Firm | DEREK L. HAYDEN, ESQ. |
| 26 Century Hill Drive | |
| Suite 202 | |
| Latham, NY 12110 | |
| | |
| *Joseph Carey, S. Casamissima,* | |
| *Richard Kratzenberg, Michael Hobb,* | |
| *Scott Baily, and Anthony Annucci* | |
| HON. ERIC T. SCHNEIDERMAN | LOUIS JIM |
| New York State Attorney General | Assistant Attorney General |
| Litigation Bureau | |
| The Capitol | |

Albany, NY 12224

*John Doe, Seeley, and*
*County of Greene*
Burke, Scolamiero Law Firm
7 Washington Square
Albany, NY 12212

JUDITH B. AUMAND, ESQ.
PETER M. SCOLAMIERO, ESQ.

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* Thomas Kearney commenced this action against twelve defendants[1] pursuant to 42 U.S.C. § 1983 alleging constitutional violations arising from the revocation of his post-release supervision. (Am. Compl., Dkt. No. 38.) Pending are motions to dismiss by the state defendants, (Dkt. No. 54), the village defendants, (Dkt. No. 59), and the county defendants, (Dkt. No. 57). For the reasons that follow, the motions are granted.[2]

---

[1] Plaintiff named the following parties as defendants: Brian Kozloski, David Darling, and the Village of Catskill (collectively "village defendants" unless otherwise noted); Joseph Carey, Michael Hobb, Sal Casimassima, Richard Kratzenberg, Scott Baily, and Anthony Annucci (collectively "state defendants" unless otherwise noted); County of Greene, John Doe, and Gregory Seeley (collectively "county defendants" unless otherwise noted). (*See* Am. Compl., Dkt. No. 38.)

[2] Kearney has also moved for the appointment of pro bono counsel for the third time. (Dkt. No. 69.) This motion is denied as moot in light of the dismissal of Kearney's amended complaint.

2

## II. **Background**[3]

Kearney is a former state inmate who was released from custody on November 9, 2012 and remained on post-release supervision, which is managed by the Division of Parole within the New York State Department of Corrections and Community Supervision (DOCCS). (Am. Compl. ¶¶ 8, 18-19.) Kearney reported to his parole officer Joseph Carey for bimonthly meetings at the police department in the Village of Catskill, which is the designated reporting station for state parolees and supervisees in Greene County. (*Id.* ¶¶ 8, 20, 32.) Since his release, Kearney was working full time, was pursuing a bachelor's degree, and was volunteering at a crisis intervention hotline. (*Id.* ¶¶ 28-30.) Kearney did not have any violations of post-release supervision during his first eighteen months of supervision. (*Id.* ¶ 27.)

On April 24, 2014, Kearney reported for his bimonthly meeting with his parole officer. (*Id.* ¶ 32.) At this meeting, Carey was accompanied by Sergeant Brian Kozloski of the Catskill Police Department. (*Id.* ¶ 33.) Carey and Sergeant Kozloski questioned Kearney about a video that was

---

[3] The facts are drawn from plaintiff's amended complaint, (Dkt. No. 38), and presented in the light most favorable to him.

3

posted to his private account on the social media website Facebook. (*Id.* ¶ 34.) The video apparently depicted an intoxicated man being pushed into bushes by another man who then ran away. (*Id.* ¶ 38.) Sergeant Kozloski asked Kearney if he knew the man who committed the alleged assault. (*Id.* ¶ 38.) Kearney requested to first consult with an attorney. (*Id.* ¶ 35.) Carey stated that Kearney had to respond to any police inquiry truthfully and fully as a condition of his supervision and that he did not have the right to counsel at that time. (*Id.* ¶ 36.) Kearney then responded that he could not identify the man. (*Id.* ¶ 40.) Kearney again denied any knowledge after Carey informed him that he would be violating his supervised released if he failed to cooperate with law enforcement. (*Id.* ¶¶ 41-42.) Sergeant Kozloski informed Kearney that "[w]e can easily say it's you behind the camera and lock you up for a curfew [violation] if you wanna be a hardass about it." (*Id.* ¶ 43.)

Kearney then submitted to a drug screen, which he claims returned negative results. (*Id.* ¶¶ 46-48.) Kearney was also searched at that time. (*Id.* ¶¶ 49-50.) Carey retrieved Kearney's mobile telephone from his pocket, and Kearney provided the passcode to unlock the telephone. (*Id.* ¶ 50.) Sergeant Kozloski took the unlocked telephone from the room and

4

returned it to Kearney ten minutes later. (*Id.* ¶¶ 51-52, 54.) Upon returning, Carey directed Kearney to report to a parole office in Albany the next day at 11:00 A.M. to fully cooperate with Sergeant Kozloski's investigation of the assault. (*Id.* ¶ 56.) Kearney explained that he had to work the following day and would not be able to make it at that time. (*Id.* ¶ 57.) Carey notified Kearney that there would be a warrant for his arrest if he failed to report. (*Id.* ¶ 60.) While Kearney was leaving the station, Carey told him that "[he] was gonna be the [s]heriff in this [c]ounty soon" and that Kearney "need[ed] to make [him his] friend." (*Id.* ¶ 62.)

The next day, Kearney reported to Albany rather than attending work. (*Id.* ¶ 65.) Carey again asked Kearney for information about the alleged assault captured on the Facebook video. (*Id.* ¶ 66.) Kearney repeated that he knew nothing about the incident. (*Id.* ¶ 67.) Parole officers Michael Hobb and Scott Baily were also present. (*Id.* ¶ 65.) Kearney was then directed to remove the contents of his pockets which included his car keys. (*Id.* ¶ 70.) Carey took the keys to unlock Kearney's car and retrieve his mobile telephone. (*Id.* ¶ 73.) While Carey was outside, Hobb and Baily affixed a GPS ankle bracelet to Kearney. (*Id.* ¶ 70.) Upon Carey's return, Kearney provided him with the passcode to unlock his mobile telephone.

5

(*Id.* ¶ 73.)

During this visit, Kearney repeatedly requested to speak with Carey's supervisor. (*Id.* ¶¶ 67, 69, 71, 74.) Carey informed Kearney that he could after he submitted to a drug and alcohol test. (*Id.* ¶ 77.) Carey instructed Kearney to sign a drug and alcohol screen form, but Kearney twice refused noting that the form was blank. (*Id.* ¶¶ 78-81.) Carey then handcuffed Kearney and explained that he was being placed in custody for refusing to comply with an order from a parole officer and for suspicion of drug or alcohol use. (*Id.* ¶¶ 82-83.) Kearney then submitted to both drug and alcohol tests, which, according to Kearney, returned negative results. (*Id.* ¶¶ 85-87.) Carey presented the screen form for Kearney to sign, but Kearney refused because the document indicated that he admitted to alcohol use when, according to him, he never did. (*Id.* ¶¶ 89-90.) Carey then stated that Kearney did not have to sign because witnesses would explain that Kearney appeared at the station as a "fall-down drunk and reeking of alcohol." (*Id.* ¶ 91.) Hobb signed the form as a witness. (*Id.* ¶ 92.) Carey then told Kearney he was being placed in custody and transported to the Greene County Jail for consuming alcohol while under supervision and "whatever else [Carey] . . . c[ould] think up over the

6

weekend." (*Id.* ¶ 94.) On the same day, Carey allegedly unlawfully signed a warrant for Kearney's arrest, and Kearney was held without bail. (*Id.* ¶¶ 96, 98.)

On May 1, 2014, Carey, Hobb, and Baily testified at Kearney's preliminary revocation hearing before Hearing Officer Richard Kraztenberg. (*Id.* ¶¶ 99-100.) At the hearing, Hearing Officer Kraztenberg rejected Kearney's assertion that the warrant was unlawful and denied Kearney's request to enter his April 25, 2014 drug and alcohol screening into evidence. (*Id.* ¶¶ 102-03.) Following the hearing, Kearney alleges that Carey and Hearing Officer Kratzenberg informed Senior Parole Officer Sal Casimassima that he needed to replace the allegedly unlawful warrant. (*Id.* ¶ 104.) According to Kearney, Casimassima then back dated and signed a warrant and faxed it to Greene County Jail to replace the allegedly unlawful warrant. (*Id.* ¶ 106.) Carey and Hearing Officer Kraztenberg also contacted a Green County Jail employee, identified in the amended complaint as John Doe, to remove the defective warrant and replace it with the new warrant prepared by Casimassima. (*Id.* ¶¶ 105, 107-08.)

Between April and May of 2014, Carey and Sergeant Kozloski

approached the victim of the assault, Peter McArdle, and coerced him to file a statement that Kearney was the individual who assaulted him on the Facebook video. (*Id.* ¶¶ 110-11.) They also coerced McArdle to testify against Kearney at his final revocation hearing. (*Id.* ¶ 112.) McArdle submitted a statement with the Catskill Police Department that Kearney had assaulted him; this new statement conflicted with McArdle's earlier statement to police. (*Id.* ¶ 113.) On May 8, 2014, Kearney was arrested and charged with assault in the third degree in Catskill Village Court. (*Id.* ¶ 114.) On May 15, 2014, this new alleged criminal conduct was added to the list of Kearney's post-release supervision violations. (*Id.* ¶ 109.) A judge from the Catskill Village Court later dismissed the criminal assault charges with prejudice. (*Id.* ¶ 119.)

In June 2014, an administrative law judge (ALJ) presided over Kearney's final revocation hearing. (*Id.* ¶ 118.) At the hearing, McArdle testified on cross-examination that he never saw Kearney until Carey and Sergeant Kozloski showed him his photograph and that they encouraged him to change his prior statement. (*Id.* ¶¶ 116-17.) The ALJ dismissed the assault charges and recommended that Kearney accept a thirteen-month penalty for a curfew violation, for which he then pleaded guilty to. (*Id.* ¶

8

118.) Kearney was expected to be released on May 25, 2015 for this violation. (*Id.* ¶ 131.) He, however, is presently in custody for another violation of post-release supervision. (Dkt. Nos. 63, 71; Dkt. No. 77 at 1.).

On November 26, 2014, Kearney commenced this action against the defendants. (Compl., Dkt. No. 1.) In response, the county defendants and village defendants answered and asserted cross-claims against all other defendants for contribution. (Dkt. No. 40 ¶¶ 186-87; Dkt. No. 45 ¶ 46.) All defendants have since filed motions to dismiss. (Dkt. Nos. 54, 57, 59.) Kearney failed to file a response to defendants' motions after the court granted several extensions *sua sponte*. (Dkt. No. 68.) The court then directed all parties to brief whether *Heck v. Humphrey*, 512 U.S. 477 (1994), bars any or all of Kearney's claims, (Dkt. No. 72), to which all parties responded, (Dkt. Nos. 73-75, 77).

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior opinion in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191

(2d Cir. 2015).

## IV. Discussion

To state a cognizable civil rights claim, Kearney must first satisfy the requirements of the favorable termination rule. *See McKithen v. Brown*, 481 F.3d 89, 101 n.13 (2d Cir. 2007). This rule directs that a state inmate's claim under 42 U.S.C. § 1983 is precluded if "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). To do this, the plaintiff must show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* This rule squares the "potential overlap between [section] 1983 and the habeas provision" as "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release." *McKithen,* 481 F.3d at 100 (internal quotation marks and citations omitted).

The scope of the favorable termination rule extends to civil rights

claims seeking equitable relief. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). In addition, *Heck* bars claims which challenge the procedure used to secure a conviction or sentence where the "principal procedural defect complained of . . . would, if established, necessarily imply the invalidity of the deprivation." *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). Courts have applied the favorable termination rule to claims which bear on the validity of the underlying conviction or sentence including claims of false arrest, *see Woods v. Candela*, 47 F.3d 545, 546 (2d Cir. 1995), malicious prosecution, *see Wiggins v. Buffalo Police Dep't*, 320 F. Supp. 2d 53, 56-57 (W.D.N.Y. 2004), due process, *see Hunter v. City of N.Y.*, 35 F. Supp. 3d 310, 315-17 (E.D.N.Y. 2014), and conspiracy, *see Amaker v. Weiner*, 179 F.3d 48, 51-52 (2d Cir. 1999).

As noted by all defendants, (Dkt. Nos. 73-75), *Heck* also precludes section 1983 actions challenging the validity of confinement based on the revocation of parole. *See Lee v. Donnaruma*, 63 F. App'x 39, 41 (2d Cir. 2003); *Scott v. Woodworth,* No. 9:12-CV-0020, 2013 WL 3338574, at *11 (N.D.N.Y. July 2, 2013); *Davis v. Cotov*, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002); *see also Harris v. Fulwood*, 611 F. App'x 1, 2 (D.C. Cir. 2015); *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006); *Butterfield*

11

*v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997); *White v. Gittens*, 121 F.3d 803 (1st Cir. 1997); *Schafer v. Moore*, 46 F.3d 43 (8th Cir. 1995); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996); *McGrew v. Texas Bd. of Pardons & Parole*, 47 F.3d 158, 161(5th Cir. 1995).

Logic compels the same application to challenges to the revocation of post-release supervision. For one, the revocation of parole and post-release supervision are governed by the same procedures and standards in New York State. *See* N.Y. Exec. Law § 259-i(3); 9 N.Y.C.R.R. subtit. CC., pts. 8004-05. And like parole, post-release supervision is deemed custody for the purposes of habeas corpus. *See Vincent v. Yelich*, 718 F.3d 157, 163 (2d Cir. 2013) ("Post-release supervision [in New York], admitting the possibility of revocation and additional jail time, is considered to be custody.") (internal quotation marks and citations omitted); *see also Jones v. Cunningham*, 371 U.S. 236 (1963) (holding that parole satisfies the "in custody" requirement for habeas petitions). For these reasons, the court holds that a state inmate cannot commence a section 1983 action which, if proven, would imply the invalidity of the revocation of his post-release supervision absent evidence that such revocation has been previously invalidated.

Kearney fails to allege that his revocation has been "reversed, expunged, invalidated, or impugned by a grant of habeas corpus." *Heck*, 512 U.S. at 489. Because Kearney fails to meet this threshold requirement, he may not then challenge pursuant to section 1983 "actions whose unlawfulness would render" invalid the incarceration from the revocation of his post-release supervision. *Id.* at 586.

Although Kearney invokes numerous constitutional provisions in his amended complaint, "[t]he gravamen of [his] allegations is that his [post-release supervision] was wrongly and unconstitutionally revoked." *Jude v. New York*, No. 07 Civ. 5890, 2009 WL 928134, at *8 (S.D.N.Y. Mar. 30, 2009). Kearney generally alleges that Carey violated him because he refused to "work[] as an informant" and provide information to Carey and Sergeant Kozloski about the alleged assault on his Facebook page. (Am. Compl. ¶ 42.) Indeed, Kearney alleges that he was "confined on the basis of two warrants procured by dishonest means without probable cause." (*Id.* ¶ 133.) Kearney further claims that there was a conspiracy to cover up the defective warrant by failing to enter it into evidence at his preliminary revocation hearing. (*Id.* ¶ 103.) Kearney intimates that if the warrant was entered into evidence it would have to be dismissed and "would have

13

restored [him] to supervision." (*Id.*)  Additionally, Kearney alleges that there was a conspiracy to cure the defective warrant, which violated his right to due process.  (*Id.* ¶¶ 104-08, 159.)  Ultimately, Kearney claims that all defendants "conspired to deny [his] liberty."  (*Id.* ¶ 1.)  By commencing this action, Kearney attempts to obtain civil relief for alleged procedural defects and constitutional violations that led to his incarceration.  This litigation tactic is plainly barred by *Heck* and its progeny.  *See Heck*, 512 U.S. at 486 (noting that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments").  Because *Heck* bars all claims seeking to invalidate Kearney's revocation of his post-release supervision and subsequent incarceration, he fails to state a claim for which relief can be granted, and the court grants defendants' motions on this ground.[4]

To the extent that Kearney challenges the criminal assault charge brought against him in Catskill Village court, these claims also fail.  (Am.

---

[4] The court notes that *Heck* still applies even though Kearney was released for this violation of post-release supervision in May 2015.  (Am. Compl. ¶ 131; Dkt. No. 77 at 1.)  Kearney commenced this action on November 26, 2014, while serving his sentence for the violation.  (Compl. ¶ 1, Dkt. No. 1.); *see Browdy v. Karpe*, No. 3:00 CV 1866, 2004 WL 2203464, at *6-8 (D. Conn. Sept. 20, 2004) (holding that *Heck* applies to section 1983 actions that were commenced by inmates while in custody but who were subsequently released during the course of the litigation).

14

Compl. ¶ 114.) Kearney appears to allege false arrest and malicious prosecution claims based on his May 8, 2014 charge for assault. (*Id.* ¶¶ 114-15, 119.) This charge was later dismissed with prejudice. (*Id.* ¶ 119.) Probable cause is a complete defense to both claims. *See Manganiello v. City of N.Y.*, 612 F.3d 149, 161-62 (2d Cir. 2010) (malicious prosecution); *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) (false arrest). Before his arrest, McArdle, the apparent victim of the assault, filed a statement with the Catskill Police Department that Kearney was his assailant. (Am. Compl. ¶ 113.) This statement in addition to the Facebook video depicting the assault is sufficient probable cause that Kearney committed the charged crime. *See, e.g.*, *Reinhart v. City of Schenectady Police Dep't*, 599 F. Supp. 2d 323, 333 (N.D.N.Y. 2009) (holding a victim's sworn statement alone was sufficient probable cause to serve as a defense to claims of false arrest and malicious prosecution). Because probable cause existed for both the arrest and prosecution, defendants' motions are also granted on these grounds.

In this case, the court finds that granting Kearney leave to amend would be futile. *See Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that courts should deny leave to amend a *pro se* complaint as

futile if better pleading will not cure the defect). The court provided Kearney with notice and an opportunity to respond to defendants' arguments about whether *Heck* barred his claims. (Dkt. No. 72.) Kearney, however, has failed to suggest any facts that the revocation of his post-release supervision has been favorably terminated according to the requirement set forth in *Heck*. *See Heck*, 512 U.S. at 489 (holding that no section 1983 cause of action exists "unless and until [the revocation] is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus"). Because Kearney cannot overcome this substantive hurdle, repleading would be futile. *See Cuoco*, 222 F.3d at 112.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Kearney's motion for appointment of counsel (Dkt. No. 69) is **DENIED**; and it is further

**ORDERED** that the state defendants' motion to dismiss (Dkt. No. 54) is **GRANTED**; and it is further

**ORDERED** that the county defendants' motion to dismiss (Dkt. No. 57) is **GRANTED**; and it is further

**ORDERED** that the village defendants' motion to dismiss (Dkt.

No. 59) is **GRANTED**; and it is further

**ORDERED** that Kearney's amended complaint (Dkt. No. 38) is **DISMISSED**; and it is further

**ORDERED** that the cross-claims by the county and village defendants (Dkt. No. 40 ¶¶ 186-87; Dkt. No. 45 ¶ 46) are **DISMISSED**; and it is further

**ORDERED** that the Clerk shall close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 7, 2016
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
U.S. District Judge